UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE THOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>    Defendants. | Case No. 19-cv-06463-SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF LEAVE TO AMEND**<br><br>Re: Dkt. No. 22 |

On March 6, 2020, the Court held a hearing on defendants' motion to dismiss. For the reasons set forth below, the Court GRANTS the motion with leave to amend the complaint. The amended complaint shall be filed no later than **March 20, 2020**.

## BACKGROUND

This lawsuit arises out of plaintiff's release from the women's soccer team at the University of California, Berkeley ("Cal"). Plaintiff claims that defendants discriminated against her on account of her gender by releasing her and other women from the women's soccer team, while only one man was released from the men's soccer team. Defendant the Regents of the University of California ("the Regents") is the governing body that owns and operates the University of California, Berkeley. Compl. at ¶ 6 (Dkt. No. 1). The Regents receive federal funds and must comply with Title IX of the Education Amendments of 1972 ("Title IX"). *Id*. Defendants Jim Knowlton and Neil McGuire are the athletic director and the head coach of the women's soccer team at the University of California, Berkeley, respectively. *Id*. at ¶¶ 6-7.

The complaint alleges that plaintiff is "a highly acclaimed high school and club soccer player." *Id*. at ¶ 1. "She played club soccer with the Los Angeles Futbol Club Slammers where she

won the 2018 Development Academy U18/19 National Championship. She also played soccer for the Laguna Beach High School's varsity soccer team." *Id.* at ¶ 10. Plaintiff was recruited by defendant Neil McGuire to play soccer as a freshman on the Cal women's team for the 2018-2019 season. *Id*. at ¶ 11. Plaintiff accepted a non-scholarship position, forgoing a scholarship to play soccer at the University of Colorado. *Id*. at ¶ 12. Plaintiff understood there to be an implicit promise that she would remain on the team if she met the team's performance expectations. *Id*. at ¶ 1. During the 2018-2019 season plaintiff played 304 minutes, more than any other non-scholarship freshman on the women's team. *Id*. at ¶ 16. Plaintiff ranked twentieth on the team in playing time, and she was tied for eighth in goals and assists. *Id*. Additionally, plaintiff participated in opportunities to improve her performance throughout the season. *Id*. at ¶ 15. Plaintiff trained individually with Coach McGuire before practices and earned the honor of "most improved player" at the team's annual banquet. *Id*. at ¶¶ 17, 18.

"On April 29, 2019, without warning or explanation, Mr. MCGUIRE released Ms. Thomas from the women's soccer team, along with four others." *Id*. at ¶ 19. As athletic director, defendant Knowlton was responsible for approving Coach McGuire's decision to release the five women from the team. *Id*. at ¶ 20. Plaintiff alleges that "[p]layers are not commonly released from University-level athletics teams." *Id.* at ¶ 21. "In spring 2019, the Cal men's soccer team released just one male player who had played substantially fewer minutes than did other men's team players." *Id*. The complaint does not allege that the men's and women's soccer teams were coached by the same individuals, nor does the complaint allege any connection between the two soccer teams.

Plaintiff alleges that she and the "other young women on the women's soccer team were treated unfairly when compared with their male counterparts," and that the "University did not treat male soccer players whose performance was similar to that of Ms. Thomas in the same manner." *Id*. ¶¶ 1, 21. Plaintiff alleges she has suffered "serious emotional distress, embarrassment, and harm to her reputation," and that she was "deprived of her opportunity to play on other university soccer teams." *Id*. at ¶ 22.

Plaintiff filed the complaint on October 10, 2019. The complaint includes five causes of action: First (Violation of Title IX of the Education Amendments of 1972), Second (Violation of

2

Section 66271.8 of the California Education Code), Third (Violation of the Unruh Act), Fourth (Negligence), and Fifth (Negligent Infliction of Emotional Distress). Defendants move to dismiss Counts One through Five of plaintiff's complaint.

Both parties also seek judicial notice of several documents. Dkt No. 22-2 (Defendants' Request for Judicial Notice); Dkt. No. 27 (Plaintiff's Request for Judicial Notice). Defendants seek judicial notice of official records published by the University of California, Berkeley, Athletics Department, reflecting the historical record and performance of the University of California, Berkeley, Women's Soccer Team. Dkt. No. 22-2. Defendants rely on these records to assert that the 2018-2019 season "ended with a 5-13-5 record and was – far and away – the worst season in the 37 year history of competitive soccer at UC Berkeley." Mtn. at 6. Defendants also rely on these records to assert that "[t]he team rebounded the year after Plaintiff was released from the team, finishing the season with a 13-5-3 record and qualifying for the national tournament." *Id*. The Court GRANTS defendants' request for judicial notice and will take judicial notice of the team's playing record; the Court does not draw any inferences from these documents about why Cal performed poorly in 2018-2019 and performed well the year after.

Plaintiff seeks judicial notice of documents stating the "cumulative statistics" of soccer players on the men's and women's teams for the last several years. Dkt. No. 27. Plaintiff's opposition relies on these documents to compare herself to "similarly situated male players," specifically with regard to minutes played. Opp'n at 3. Plaintiff draws comparisons between herself and Cal men's soccer team freshmen Kaleo Fernandez, Christian Gomez, and Peter Dylan who played 375 minutes, 91 minutes, and 9 minutes during the 2018 season, respectively. *Id*. All three men returned to play for the team in the 2019 season. *Id*. Plaintiff also uses Exhibits C, D, E, and F to compare herself with similarly situated female players to rebut defendant's argument that the Court should "infer that Ms. Thomas was 'released from the team as new women-deemed more likely to lead the team to victory-were added to the roster instead of her.'" *Id*. Finally, plaintiff relies on these documents to show that the men's soccer team at the University of California, Berkeley also had a losing season in 2018-2019. The Court GRANTS plaintiff's request for judicial notice of these statistics.

3

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, the court may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). The court may not take judicial notice of facts in the public record that are subject to reasonable dispute. *Lee*, 250 F.3d at 690.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

4

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

Defendants move to dismiss Counts One through Five of the plaintiff's complaint for failure to state a claim upon which relief can be granted. Defendants argue that all of plaintiff's claims fail because she has not alleged facts suggesting that she was discriminated against on account of her gender. Defendants also contend that plaintiff's state law claims should be dismissed on additional grounds, such as statutory immunity.

**I.     Title IX**

In Count One of her complaint, plaintiff alleges that the Regents violated Title IX by denying her equal treatment as compared with male athletes. Defendants argue the complaint fails because (1) it fails to state a claim of gender discrimination, and (2) it fails to state a claim of gender-based disparate treatment under Title IX.

Plaintiff's theory of the case, which underlies each of her claims, is that the Cal men's and women's soccer players were treated unequally. Compl. ¶¶ 27, 33, 37, 41, 45. Plaintiff's unequal treatment claims are based on the greater number of women released from the women's soccer team compared to the number of men released from the men's team. *Id*. at ¶¶ 19, 21. Plaintiff seeks to compare herself to similarly situated players on the men's team to allege that she and the "other young women on the women's soccer team were treated unfairly when compared with their male counterparts." *Id*. at ¶ 21. Plaintiff largely focuses on minutes played during the soccer season as a basis for alleging that she is similarly situated to other male players. *Id*. at ¶¶ 16, 21. Plaintiff also mentions that she "tied for eighth in points for goals and assists" on the women's team but does not compare herself to men's players in terms of points. *Id*. at ¶ 16.

Several courts have held that Title VII disparate treatment framework applies to or can inform analysis of Title IX claims. *See e.g., Bowers v. Bd. of Regents of Univ. of Ga*., 509 F. App'x 906, 910 (11th Cir. 2012) (applying Title VII framework to assess Title IX disparate treatment

claims); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2011) (applying Title VII burden-shifting framework for retaliation claims to Title IX retaliation claim). Under this framework, a plaintiff bears the burden of establishing a *prima facie* case of disparate treatment, by showing that similarly situated individuals not in a protected class received more favorable treatment. *See Kang v. U. Lim Am., Inc.*, 296 F. 3d 810, 818 (9th Cir. 2002). In order to show that a plaintiff is similarly situated to an individual not in a protected class, she must establish that the individual received more favorable treatment "in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). "Although material characteristics vary from case to case, in termination and discipline cases, the Ninth Circuit looks to factors such as whether the proposed comparator and the plaintiff were subject to the same policies, worked at the same jobs, committed similar violations, and had similar disciplinary records." *McDaniels v. Grp. Health Co-op*, 57 F. Supp. 3d 1300, 1311 (W.D. Wash. 2014).

Here, plaintiff focuses on one characteristic in drawing a comparison between herself and her male counterparts: playing time. Plaintiff's opposition, citing the statistics documents for which she seeks judicial notice, asserts that Cal men's soccer team freshmen Kaleo Fernandez, Christian Gomez, and Peter Dylan are comparable to her, based on each player's amount of game time. Opp'n at 3. As an initial matter, plaintiff does not dispute that the men and women's soccer teams were coached by different coaching staffs, and plaintiff does not allege any basis for drawing a connection between coaching decisions made by the women's soccer coaches and the men's soccer coaches, much less a connection that supports an inference of gender discrimination. In addition, neither plaintiff's complaint nor opposition allege a factual basis – beyond simply comparing minutes played – for concluding that male soccer players are similarly situated to plaintiff. In the absence of any allegations showing why it is reasonable to compare the coaching decisions made by the separately coached men's and women's teams, it is not enough to simply allege that male players with less playing time were not released while plaintiff and several other women were released. Reasonable inferences cannot be drawn based on playing time, or other isolated performance statistics. The documents upon which plaintiff relies provide statistics on how the male players performed during the 2018 season. Dkt. No. 27-2. However, there is no context for these numbers.

6

Furthermore, there are qualitative aspects in evaluating an individual on a team. For example, a player may be evaluated based on potential to improve, or how they fit into a coach's vision for their team. Without additional facts on how the two teams made decisions to release players, plaintiff is unable to show she was similarly situated to her male counterparts. To give rise to an equal treatment claim, a plaintiff must make "sufficient, nonconclusory allegations plausibly linking the [action at issue] to discrimination on the basis of sex." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019). "Just saying so is not enough. A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination." *Id*.

The Court finds *Austin v. University of Oregon* instructive. The court in Austin addressed whether student athletes accused of sexual assault alleged enough facts to state a Title IX claim. *Austin*, 925 F.3d at 1137. The plaintiffs in *Austin* brought Title IX claims under theories of selective enforcement, erroneous outcome, and deliberate indifference. *Id*. at 1138. "The essence of the selective enforcement theory is that the decision to discipline the student athletes was grounded in gender bias." *Id*. (quotations omitted). The court concluded the complaint failed to "make any plausible link connecting these events and the University's disciplinary actions to the fact that the student athletes are male." *Id*.

Here, plaintiff's complaint makes a similar error. Plaintiff alleges that more women than men were cut after the 2018-2019 soccer season. But plaintiff does not connect Coach McGuire's decision to release five female players with the decision made by the coach of the men's team to release one player. As such, plaintiff fails to make a plausible link between the alleged gender bias and the event at issue. The plaintiffs in *Austin* also alleged that the University only enforced sexual misconduct violations against men but not against women. *Austin*, 925 F.3d at 1137. The court concluded that the complaint failed because it did not allege any similarly situated students who were disciplined unequally. *Id*. Plaintiff in this case argues that her complaint does not make the same mistake because it "identifies different treatment between men and women despite their similar situations." Opp'n at 4. Plaintiff compares the one male player released to the five female players released and asks the court to consider the playing times of three male players during the 2018-2019 season. However, even if this Court considered the playing times of the three male players, there

is still a "lack of parallelism" between the release of the women players and the retention of the men. *Austin*, 925 F.3d at 1137. The *Austin* court agreed that "simply because enforcement is asymmetrical does not mean that it is selectively so." *Id*.

Defendants also argue that plaintiff does not allege any of the factors typically considered "when evaluating whether a university is providing equal treatment and benefits." Mtn. at 12-13. "[E]qual treatment claims allege sex-based differences in the schedules, equipment, coaching, and other factors affecting participants in athletics." *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 965 (9th Cir. 2010) (citing 34 C.F.R. § 106.41(c)(2)-(10)). 34 C.F.R. section 106.41(c)(2)-(10) lists a non-exhaustive list of factors relevant to determining whether there is equivalence in treatment and benefits in athletics. These factors include: "(2) The provision of equipment and supplies; (3) Scheduling of games and practice time; (4) Travel and per diem allowance; (5) Opportunity to receive coaching and academic tutoring; (6) Assignment and compensation of coaches and tutors; (7) Provision of locker rooms, practice and competitive facilities; (8) Provision of medical and training facilities and services; (9) Provision of housing and dining facilities and services; (10) Publicity." The complaint does not allege any sex-based differences in any of these factors.

At the hearing, plaintiff's counsel requested the opportunity to amend the complaint to allege additional facts in support of an unequal treatment claim. Plaintiff's counsel suggested that plaintiff could allege, *inter alia*, that the Regents tolerated abusive behavior by coaches of the women's team to the women's players and/or some connection to the "Varsity Blues" scandal, and that plaintiff could allege facts showing that she received unequal treatment. The Court will GRANT plaintiff leave to amend to allow plaintiff the opportunity to correct the deficiencies noted *supra* and attempt to state a claim under Title IX for unequal treatment.

## II. State Claims

As an initial matter, plaintiff concedes that she cannot state a claim under Section 66271.8 of the California Education Code (Count Two) and that her claim for negligent infliction of emotional distress (Count Five) should be dismissed. Accordingly, those claims are DISMISSED

8

without leave to amend.

Plaintiff's remaining state law claims are based on the same underlying theory as plaintiff's Title IX claim, namely that the Cal men's and women's soccer teams were treated unequally. In Count Three, plaintiff alleges individual defendants McGuire and Knowlton violated the Unruh Act by denying "Ms. Thomas full and equal privileges as compared with male athletes." Compl. ¶ 33. In Count Four, plaintiff alleges individual defendants McGuire and Knowlton breached "a duty of care to Ms. Thomas to avoid subjecting her to discrimination based upon her gender and the injuries she would suffer as a result of such discrimination." *Id*. at ¶ 41. For the reasons stated *supra*, because plaintiff has not plausibly alleged facts suggesting unequal treatment, plaintiff has not stated a claim under the Unruh Act or for negligence, and these claims are DISMISSED with leave to amend.

Defendants contend that there are additional bases to dismiss the Unruh Act and negligence claims, such as statutory immunity under California Government Code § 820.2 for the Unruh Act claim and a lack of duty for the negligence claim. Since plaintiff intends to amend the complaint, the Court does not reach these other grounds for dismissal at this time. Defendants may renew their arguments in the event they move to dismiss the amended complaint.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss. The amended complaint shall be filed no later than **March 20, 2020**.

**IT IS SO ORDERED**.

Dated: March 16, 2020

SUSAN ILLSTON
United States District Judge