1
2
3
4                      UNITED STATES DISTRICT COURT
5                    NORTHERN DISTRICT OF CALIFORNIA
6

7    RENEE THOMAS,                        Case No. 19-cv-06463-SI
8                Plaintiff,
                                          **ORDER GRANTING DEFENDANTS'**
9         v.                              **MOTION TO DISMISS FIRST**
                                          **AMENDED COMPLAINT WITHOUT**
10   THE REGENTS OF THE UNIVERSITY        **LEAVE TO AMEND**
     OF CALIFORNIA, *et al.*,
11               Defendants.              Re: Dkt. No. 44
12

13        Defendants' motion to dismiss the first amended complaint was scheduled for a hearing on

14   July 10, 2020. The Court determined that the matter is appropriate for resolution without oral

15   argument, and VACATED the hearing. The July 10 case management conference was also

16   VACATED. For the reasons set forth below, the Court GRANTS defendants' motion and dismisses

17   the complaint without leave to amend.

18

19                                 **BACKGROUND**

20   **I.     Original Complaint and Order Dismissing Original Complaint**

21        Plaintiff Renee Thomas filed this action on October 8, 2019. This lawsuit arises out of

22   plaintiff's release from the women's soccer team at the University of California, Berkeley ("Cal")

23   on April 29, 2019, towards the end of her freshman year. Plaintiff has sued the Regents of the

24   University of California ("the Regents"), Jim Knowlton and Neil McGuire. The University of

25   California, Berkeley is governed by the Regents, and the Regents receive federal funds and must

26   comply with Title IX of the Education Amendments of 1972 ("Title IX"). *Id.* Defendant Jim

27   Knowlton is the Cal Athletic Director and defendant Neil McGuire is the head coach of the Cal

28   women's soccer team.

United States District Court
Northern District of California

The original complaint alleged that defendants discriminated against plaintiff on the basis of her sex by releasing her and four other women from the women's soccer team at the end of the 2018-2019 school year, while only one man was released from the men's soccer team. Plaintiff alleged that she is "a highly acclaimed high school and club soccer player." Compl. at ¶ 1. "She played club soccer with the Los Angeles Futbol Club Slammers where she won the 2018 Development Academy U18/19 National Championship. She also played soccer for the Laguna Beach High School's varsity soccer team." *Id.* at ¶ 10. Plaintiff was recruited by defendant Neil McGuire to play soccer as a freshman on the Cal women's team for the 2018-2019 season. *Id*. at ¶ 11. Plaintiff accepted a non-scholarship position, forgoing a scholarship to play soccer at the University of Colorado. *Id*. at ¶ 12. Plaintiff understood there to be an "implicit promise" that she would remain on the team if she met the team's performance expectations. *Id*. at ¶ 1. During the 2018-2019 season plaintiff played 304 minutes, more than any other non-scholarship freshman on the women's team. *Id*. at ¶ 16. Plaintiff ranked twentieth on the team in playing time, and she was tied for eighth in goals and assists. *Id*. Additionally, plaintiff participated in opportunities to improve her performance throughout the season. *Id*. at ¶ 15. Plaintiff trained individually with Coach McGuire before practices and earned the honor of "most improved player" at the team's annual banquet. *Id*. at ¶¶ 17, 18.

According to the complaint, "[o]n April 29, 2019, without warning or explanation, Mr. MCGUIRE released Ms. Thomas from the women's soccer team, along with four others." *Id*. at ¶ 19. As athletic director, defendant Knowlton was responsible for approving Coach McGuire's decision to release the five women from the team. *Id*. at ¶ 20. Plaintiff alleged that "[p]layers are not commonly released from University-level athletics teams." *Id*. at ¶ 21. "In spring 2019, the Cal men's soccer team released just one male player who had played substantially fewer minutes than did other men's team players." *Id*. The original complaint did not allege that the men's and women's soccer teams were coached by the same individuals, nor did the complaint allege any connection between the two soccer teams.

In an order filed March 10, 2020, the Court dismissed plaintiff's claims under Title IX, the

Unruh Act, and for negligence with leave to amend.[1]  The Court held that plaintiff had failed to allege facts in support of the theory underlying all of her claims, namely that the Cal men's and women's soccer players were treated unequally.  The Court noted,

> Plaintiff's unequal treatment claims are based on the greater number of women released from the women's soccer team compared to the number of men released from the men's team.  [Compl] at ¶¶ 19, 21.  Plaintiff seeks to compare herself to similarly situated players on the men's team to allege that she and the "other young women on the women's soccer team were treated unfairly when compared with their male counterparts."  *Id*. at ¶ 21.  Plaintiff largely focuses on minutes played during the soccer season as a basis for alleging that she is similarly situated to other male players.  *Id*. at ¶¶ 16, 21.  Plaintiff also mentions that she "tied for eighth in points for goals and assists" on the women's team but does not compare herself to men's players in terms of points.  *Id*. at ¶ 16.

> . . .

> Here, plaintiff focuses on one characteristic in drawing a comparison between herself and her male counterparts: playing time.  Plaintiff's opposition, citing the statistics documents for which she seeks judicial notice, asserts that Cal men's soccer team freshmen Kaleo Fernandez, Christian Gomez, and Peter Dylan are comparable to her, based on each player's amount of game time.  Opp'n at 3.  As an initial matter, plaintiff does not dispute that the men and women's soccer teams were coached by different coaching staffs, and plaintiff does not allege any basis for drawing a connection between coaching decisions made by the women's soccer coaches and the men's soccer coaches, much less a connection that supports an inference of gender discrimination.  In addition, neither plaintiff's complaint nor opposition allege a factual basis – beyond simply comparing minutes played – for concluding that male soccer players are similarly situated to plaintiff.  In the absence of any allegations showing why it is reasonable to compare the coaching decisions made by the separately coached men's and women's teams, it is not enough to simply allege that male players with less playing time were not released while plaintiff and several other women were released.  Reasonable inferences cannot be drawn based on playing time, or other isolated performance statistics.  The documents upon which plaintiff relies provide statistics on how the male players performed during the 2018 season.  Dkt. No. 27-2.  However, there is no context for these numbers.  Furthermore, there are qualitative aspects in evaluating an individual on a team.  For example, a player may be evaluated based on potential to improve, or how they fit into a coach's vision for their team.  Without additional facts on how the two teams made decisions to release players, plaintiff is unable to show she was similarly situated to her male counterparts.  To give rise to an equal treatment claim, a plaintiff must make "sufficient, nonconclusory allegations plausibly linking the [action at issue] to discrimination on the basis of sex." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019).  "Just saying so is not enough. A recitation of facts without plausible connection to gender is not cured by labels and conclusory statements about sex discrimination." *Id*.

Order Granting Defendants' Motion to Dismiss and Granting Plaintiff Leave to Amend at 5-7 (Dkt.

---

[1] Plaintiff conceded that she could not state a claim under Section 66271.8 of the California Education Code (Count Two) and that her claim for negligent infliction of emotional distress should be dismissed, and thus those claims were dismissed without leave to amend.

No. 32).  The Court granted plaintiff leave to amend to correct the deficiencies noted in the order.

## II.        First Amended Complaint

On March 20, 2020, plaintiff filed a First Amended Complaint ("FAC").  The FAC alleges amended claims under Title IX, the Unruh Act, and for negligence; and a new cause of action for breach of fiduciary duty against McGuire.  Plaintiff's amended Title IX cause of action continues to allege that defendants discriminated against her on the basis of gender by releasing her from the soccer team ("unequal treatment"), and includes the same allegations mentioned *supra* with regard to plaintiff's performance and statistics during her freshman year, the "implicit promise" that plaintiff would remain on the team if she played well, and the fact that she and four other women were released from the team while only one man was released from the men's soccer team.

The FAC also includes new allegations in support of two additional Title IX theories:  that McGuire created a hostile environment based on sex and that defendants Knowlton and the Regents were deliberately indifferent to that hostile environment ("deliberate indifference"), and that defendants have not provided women with equivalent athletic participation opportunities at Cal ("effective accommodation").  The FAC includes the following new allegations:

Unequal Treatment

- Plaintiff "started against Cal's rival and multi-national championship winner, Stanford University," and she started in the first spring post-season game.  FAC ¶¶ 16-17.

- "On information and belief, the women's soccer team enrolled at least two women who were not qualified to play women's soccer.  The enrollment of the two players limited the opportunities for two or more qualified women to play on the women's team."  *Id.* ¶ 44.  "On information and belief, the University did not tolerate similar conduct on the men's team."  *Id.* ¶ 45.

Deliberate Indifference/Hostile Environment

- During plaintiff's year on the women's soccer team, "she and other student athletes were subjected to unreasonable and unconscionable gender-based abusive conduct by Mr. MCGUIRE.  Parents of the female athletes complained of his conduct to defendant Jim

4

KNOWLTON and others in the University administration.  Defendants KNOWLTON and the REGENTS OF THE UNIVERSITY OF CALIFORNIA failed to take action to protect Ms. THOMAS and others from the hostile environment based on sex created by Mr. MCGUIRE." *Id.* ¶ 2.

- "During the 2018-2019 season, Mr. MCGUIRE lost his temper at the young female athletes on many occasions.  In fits of rage, he singled out his athletes and berated them in front of the team, sometimes nonsensically, to make an example out of them and strike fear in the witnessing athletes.  He called young female athletes names, cursed at them, and degraded them with personal insults both related and unrelated to athletic performance.  He tormented them psychologically and punished them with grueling workouts.  His behavior was described to the University athletics administration as creating a culture of fear and intimidation." *Id.* ¶ 21.

- At one practice after a pre-season loss, Mr. McGuire "stopped practice to yell at Ms. THOMAS in front of the entire team before kicking her off the field and telling her she did not belong in the program." *Id.* ¶ 23.  On another occasion during a drills session, Mr. McGuire "berated Ms. THOMAS for not being disciplined, despite her commitment and her initiative [to] perform supervised drills after practice.  His outbursts made Ms. THOMAS feel like she had to be absolutely perfect, and that any error would cause him to turn his back on her." *Id.* ¶ 24.

- "In addition to his targeted attacks, Ms. THOMAS sat through tirades where Mr. MCGUIRE degraded the entire team with gender-based abuse and insults.  He called out the physique of one player in front of the team and called her weak despite her compliance with the training regimen.  He made unwelcome and inappropriate comments about players' bodies." *Id.* ¶ 25.

- McGuire "tormented the athletes psychologically" by, on one occasion, telling plaintiff and her teammates "that they needed to perform better or his children and the children of other coaches would suffer." *Id.* ¶ 26.

- "Players and their parents made complaints about Mr. MCGUIRE's conduct to defendant

KNOWLTON and others in University administration." *Id.* ¶ 28.  The FAC references (1) a complaint made in March 2018 by McGuire's assistant athletic trainer about McGuire's behavior "when he physically and psychologically abused his team following what he perceived as a moment of disrespect" *Id.*[2]; (2) a January 15, 2019 letter from Amy Sekany, a mother of a Cal women's soccer player, to Jennifer Simon-O'Neill, the Executive Senior Associate Athletics Director which "thoroughly documented the abuses suffered by her daughter and other female athletes" *Id.* ¶ 30[3]; (3) an April 2019 meeting between three Cal women's soccer players, Ms. Simon-O'Neill and Mr. Knowlton, in which the women "voice[d] their concerns about Mr. MCGUIRE's mistreatment" and Ms. Simon-O'Neill told the women that "there was nothing they could say that would result in Mr. MCGUIRE's termination" *Id.* ¶ 31; (4) an August 22, 2019 meeting between Amy Sekany, her husband, Ms. Simon-O'Neill, and a Senior Associate Athletics Director to discuss Mr. McGuire's "documented pattern of abuse" and a September 18, 2019 "meeting request" by Ms. Sekany in which she "detailed her concerns" *Id.* ¶¶ 32-33; and (5) in December 2019, the Office for the Prevention of Harassment and Discrimination reported a complaint by an employee of the University regarding Mr. McGuire's harassment of his players; the complaint "confirmed that Mr. McGuire's inappropriate comments about young women's bodies and about hickeys on the young women's necks had been reported to them." *Id.* ¶ 35.

- The University ignored and disregarded the complaints about McGuire, and "[o]n information and belief, the University would not have ignored and disregarded similar complaints of misconduct made by male athletes against their coaches." *Id.* ¶ 37.

Effective Accommodation

- "In the 2018-2019 school year, Cal had 15,567 enrolled full time undergraduate female

---

[2]  The FAC also alleges that in March 2018, the U.S. Department of Education "found that the University failed to adequately investigate and address claims of sexual harassment made by female students against faculty and staff, in violation of Title IX." *Id.*  Plaintiff does not allege that this finding involved any women's soccer players, McGuire or Knowlton.

[3]  Defendants assert that the letter was delivered by hand in late April 2019 and not mailed on January 15, 2019.  Defs' Reply at 4 n.2.

students.  Cal had 13,997 enrolled full time undergraduate male students.  For the same school year, Cal Athletics had 438 male participants in athletics and only 368 female participants in athletics.  The gap in participation opportunities was seven percent, such a significant gap that Cal would have to add over 100 spots on women's athletics teams to close the gap." *Id.* ¶ 40.[4]

- "Despite this gap, Cal reduced the number of [spots] on its women's soccer team by two while having players like Ms. THOMAS who were qualified and eager to participate but denied the opportunity." *Id.* ¶ 41.

- "[S]pots on women's athletics teams at Cal were reduced in total in the 2019-2020 school year, including on the women's soccer team.  The gap in women's athletic participation increased to eight percent." *Id.* ¶ 42.

## III.    Parties' Requests for Judicial Notice

As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).  However, the court may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).  The court may not take judicial notice of facts in the public record that are subject to reasonable dispute.  *Lee*, 250 F.3d at 690.

Plaintiff requests that the Court take judicial notice of three news articles regarding the "Varsity Blues" college admissions scandal involving the women's soccer coaches at Yale, USC and UCLA.  Dkt. No. 46, Ex. A-C.  Plaintiff asserts that these documents are relevant to her claim of unequal treatment because she has alleged that unqualified players were invited onto the women's soccer team while similar misconduct did not happen on the men's team (citing Paragraphs 44-45

---

[4]  The FAC notes that the University reported higher participation numbers for the 2018-2019 year, reporting 511 male participants in athletics and 478 female participants, for a gap of 4.3 percent.  *Id*. at n.1.  The FAC does not explain the discrepancy between the reported numbers and plaintiff's alleged numbers, or the source for plaintiff's numbers.

United States District Court
Northern District of California

1    of the FAC), and "[i]t is well-known that once-reputable women's soccer teams were implicated in

2    a scheme to give spots on their rosters to unqualified women whose parents paid bribes for their

3    admission to universities."  Pl's Opp'n at 5.

4           The Court DENIES plaintiff's request for judicial notice of the news articles.  As an initial

5    matter and as discussed further *infra*, the FAC does not actually contain any concrete, non-

6    conclusory allegations showing that McGuire or anyone else at Cal was involved in the Varsity

7    Blues bribery scandal.  Further, even if there were such allegations, the Court finds it would be

8    inappropriate to take judicial notice of news articles about soccer coaches at other universities when

9    assessing the sufficiency of plaintiff's allegations against these defendants.

10          Plaintiff also requests that the Court take judicial notice of a printout of sports clubs offered

11   at Cal (Ex. D), as well as a printout showing the Pac-12 Conference Schools, which includes Cal,

12   and a listing of men and women's sports offered at each school (Ex. E).  The Pac-12 printout states

13   that the Conference sponsors championship competition in 11 men's and 13 women's sports; Cal

14   offers 10 of the men's sports and all 13 of the women's sports.  The Pac-12 printout also states that

15   Cal offers four men's sports that are not sponsored by the Pac-12 but fielded as a varsity sport

16   (gymnastics, rugby, track and field, and water polo), and that Cal offers 3 such sports for women

17   (field hockey, track and field, and water polo).  The Court GRANTS plaintiff's request for judicial

18   notice of Exhibits D and E.

19          Defendants request judicial notice of the Cal women's soccer schedules and records from

20   1982-1986 and 1996-2019 (Ex. A).  Defendants rely on these records to assert that "[d]uring its 37

21   year history, the UC Berkeley women's soccer team has had winning records almost every year.

22   The only year in recent memory in which the team finished with a losing record was 2018—the year

23   Plaintiff was on the team—when it finished with a 5-12-2 record overall, and a conference record

24   of 1-9-1.  The 2018 season was the first time the team failed to qualify for the National Collegiate

25   Athletics Association ('NCAA') tournament in well over a decade.  By contrast, the team finished

26   the 2019 season with a 13-5-3 record overall, a 5-3-3 conference record, and again qualified for the

27   NCAA tournament."  Defs' Mtn. at 12.  The Court GRANTS defendants' request for judicial notice

28   of the team's playing record; the Court does not draw any inferences from these documents about

United States District Court
Northern District of California

8

why Cal performed poorly in 2018-2019 and performed well the year after.

Defendants also request judicial notice of the Cal men's and women's soccer rosters and statistics for 2017-2018, 2018-2019, and 2019-2020 (Ex. B-C), and the UC Berkeley Athletics Website Sports Listing and Pac-12 Conference Website Sports Listing (Ex. D).[5]  The roster records show that in the 2017-2018 season, the women's soccer team had 24 players versus 21 on the men's team; in the 2018-2019 season (the season plaintiff played), the women's team had 29 players and the men's team had 22 players; and in the 2019-2020 season, the women's team had 27 players and the men's team had 21 players.[6]  The Court GRANTS defendants' request for judicial notice of these records.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or

---

[5]  Defendants' motion states that their Exhibit D shows that "UC Berkeley currently has competitive teams for women in 14 sports, and that these 14 sports cover every single women's sport for which there is competition within the Pacific-12 Conference."  Defs' Mtn. at 13.  It is unclear how defendants arrive at the number 14.  In any event, the documents submitted by plaintiff show that Cal offered competitive teams for women in all 13 of the sports for which there is competition within the Pac-12 Conference, and thus it appears the parties are in agreement that Cal offers competitive women's teams for 100% of the sports for which there is competition within the Conference.

[6]  Defendants' motion states that the size of the women's soccer team "fluctuated from year to year depending on the needs of the team, increasing by 2 the year before Plaintiff joined, by 3 the year she joined, and declining by only 1 the year after."  Defs' Mtn. at 19-20.  Defendants did not provide the roster for 2016-2017, and thus the Court cannot take judicial notice of the change in size, if any, between 2016-2017 and 2017-2018.  The Court is also unclear on how defendants tabulated the sizes of other rosters, as the records submitted show that the team grew by 5 players in 2018-2019 to 29 players, and that the team consisted of 27 players in 2019-2020.

'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*.

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.    Title IX**

    **A.    Unequal Treatment**

The FAC alleges that "[i]n making their decision to cut Ms. THOMAS from the women's soccer team, defendant subjected her to discriminatory, gender-based treatment in that they applied different standards to male soccer players whose performance was worse or equal to that of Ms. Thomas but were allowed to continue their participation on the male soccer team."  FAC ¶ 55. Plaintiff argues that she has stated a claim for unequal treatment because the FAC alleges that (1) plaintiff was a "well-regarded soccer player" with "excellent performance" on the team (as evidenced by, for example, starting in the game against Stanford and her statistics for playing time, goals and assists), (2) she and four other women were released from the team while the Cal men's soccer team released just one male player who had played substantially fewer minutes than did other

men's team players, and (3) the women's soccer team enrolled at least two women who were not qualified to play women's soccer and on information and belief the University did not tolerate similar conduct on the men's team.[7]

Defendants contend that plaintiff has failed to cure the deficiencies identified in the Court's prior order and that plaintiff still has not stated a claim for unequal treatment. Defendants argue that plaintiff's allegations of unequal treatment are conclusory and that she has not provided any concrete allegations that showing members of the women's team were treated any differently than members of the men's team.

The Court agrees with defendants. Plaintiff has not alleged any specific facts showing that similarly situated men received more favorable treatment, as she must in order to state a claim for unequal treatment under Title IX. *See Kang v. U. Lim Am., Inc.*, 296 F. 3d 810, 818 (9th Cir. 2002). For all of the reasons stated in the prior order, plaintiff's comparisons of herself to other women on the Cal women's soccer team is not probative of discriminatory intent. Similarly, the FAC still does not provide a basis for comparing Coach McGuire's decision to release plaintiff and four other women from the (larger) women's soccer team with the decision of the men's soccer team coach to release one player from the (smaller) men's team. The new allegations that plaintiff started in several games does not add anything to suggest plaintiff was treated differently on account of her sex. And the allegations, "on information and belief," that "the women's soccer team enrolled at least two women who were not qualified to play women's soccer" and that "the University did not tolerate similar conduct on the men's soccer team" are wholly conclusory. Further, even if those conclusory allegations were true – that unqualified women were allowed on the team and "similar conduct" was not tolerated on the men's team – plaintiff has not alleged or explained why that would amount to a Title IX violation.

---

[7] Somewhat confusingly, plaintiff's opposition suggests that her hostile environment allegations are relevant to her unequal treatment claim. *See* Pl's Opp'n at 5:10-12. The FAC does not allege any connection between the alleged hostile environment and plaintiff's release from the team. In any event, as discussed *infra*, the Court concludes that plaintiff's hostile environment allegations fail to state a claim, and the result would not be different if the Court considered those allegations as part of the unequal treatment claim or as asserting a separate Title IX theory.

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.      Hostile Environment/Deliberate Indifference

The FAC alleges that "Ms. THOMAS and other women on the women's soccer team were subject to a hostile environment based on sex perpetuated by NEIL MCGUIRE.  The REGENTS OF THE UNIVERSITY OF CALIFORNIA and JIM KNOWLTON knew of this hostile environment and failed to take remedial action to protect women like Ms. THOMAS who were subject to such treatment."  FAC ¶ 53.

Defendants contend that plaintiff has failed to state a claim for a hostile environment/deliberate indifference for three reasons.  First, defendants argue that plaintiff has failed to plead any gender-based discrimination or sexual harassment by McGuire.  Defendants contend that plaintiff's allegations of harassment are conclusory and that she has not alleged even a single example of gender-based abuse, harassment or discrimination, as opposed to generalized allegations of "outbursts" and "abusive" behavior.  Second, defendants argue that because Title IX does not impose *respondeat superior* liability on a university, the university can only be liable for any alleged sexual harassment if the university was put on notice of the harassment and failed to act.  *See generally Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 641 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).  Defendants contend that plaintiff's allegations of notice are vague and conclusory and that some of the allegations are irrelevant because they post-date plaintiff's time on the soccer team.  Third, defendants argue that even if plaintiff had adequately alleged both gender-based harassment and notice, plaintiff has failed to allege that the University's deliberate indifference to the harassment denied her access to an educational benefit or opportunity.

"[A] plaintiff alleging a Title IX claim against a school that arises from student-on-student or faculty-on-student sexual harassment or assault must establish . . . harassment 'that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school."  *Karasek v. Regents of University of California*, 956 F.3d 1093, 1105 (9th Cir. 2020) (quoting *Davis*, 526 U.S. at 645); *see also Parents for Privacy v. Barr*, 949 F.3d 1210, 1226 (9th Cir. 2020) ("Stating a Title IX hostile environment claim requires [*inter alia*] "harassment because of sex").

The Court concludes that plaintiff has failed to allege that McGuire created a hostile

environment, and thus does not reach defendants' other arguments. As an initial matter, allegations that plaintiff and her teammates "were subjected to unreasonable and unconscionable gender-based abusive conduct" by McGuire are conclusory and the Court disregards them. *See* FAC ¶ 2. Most of the allegations in the FAC of McGuire's alleged harassment do not involve harassment *because of sex*. "Sexual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings v. Univ. of North Carolina*, 482 F.3d 686, 695 (4th Cir. 2007). Here, plaintiff alleges that on one occasion McGuire yelled at plaintiff and told her she did not belong on the team and on another occasion berated her for not being disciplined. *Id.* ¶¶ 23-24. Similarly, the FAC alleges that McGuire "singled out his athletes and berated them," "called young female athletes names, cursed at them and degraded them with personal insults both related and unrelated to athletic performance," and that he "tormented them psychologically and punished them with grueling workouts." *Id.* ¶ 21; *see also id.* ¶¶ 20, 22, 26-28, 30, 36 (alleging McGuire "behaved erratically and abusively," "further tormented the athletes psychologically," and continued "ill treatment"). Such alleged behavior, if proven, could be described as demeaning or abusive. However, it is not "harassment because of sex." *Cf. Jennings*, 482 F.3d at 695-97 (holding soccer coach's "persistent, sex-oriented discussions, both in team settings and in private" qualified as sexual harassment where allegations included, *inter alia*, that coach "frequently singled out players to find out whether, with whom, and how often they were having sex"; asking a player about the size of her boyfriend's genitalia; talking about his sexual fantasies involving players; mocking a lesbian player; and making graphic comments about the "nice rack[s]" and "nice legs" of certain players).

Plaintiff argues that she has adequately alleged gender-based harassment because she has alleged that McGuire used gender-based insults and made comments that inappropriately focused on the bodies of young women and their sexual activity. Pl's Opp'n at 8 (citing FAC ¶¶ 25, 35). In those paragraphs of the FAC, plaintiff alleges that McGuire (1) "degraded the entire team with gender-based abuse and insults," (2) "called out the physique of one player in front of the team and called her weak despite her compliance with the training regimen," (3) "made unwelcome and inappropriate comments about players' bodies," and (4) that in December 2019, the Office for the

Prevention of Harassment and Discrimination "reported a complaint by an employee of the University . . . [which] confirmed that Mr. MCGUIRE'S inappropriate comments about young women's bodies and about hickeys on the young women's necks had been reported to them." *Id*. ¶¶ 25, 35.

These allegations are insufficient to state a claim for Title IX hostile environment. The first allegation is conclusory. The second allegation – that McGuire "called out the physique" of a player and called her "weak" – does not, without anything more, suggest an inference of sexual harassment. The remaining allegation that McGuire made "unwelcome and inappropriate comments" about player's bodies and hickeys on their necks – is vague and devoid of any detail showing that McGuire subjected plaintiff and the other players to "sex-specific language that is aimed to humiliate, ridicule, or intimidate." *Jennings*, 482 F.3d at 695. The FAC does not allege any details such as what McGuire allegedly said or the context or frequency of these comments. Plaintiff's opposition brief also does not provide any more detail regarding these alleged comments, nor does plaintiff suggest that she could provide such details by amending the complaint (and indeed plaintiff's opposition does not request leave to amend if the Court finds the FAC insufficient).

For the same reasons, in addition to failing to allege that she was subjected to harassment "because of sex," plaintiff has not alleged facts showing sex-based harassment that was sufficiently severe or pervasive to create a hostile or abusive environment. *Cf. id*. at 698 (holding the plaintiff had proffered facts permitting a finding of severe or pervasive sex-based harassment where "sex-based verbal abuse permeated team settings").

### C.    Effective Accommodation

The FAC alleges that "Ms. THOMAS was a qualified and interested soccer player who was denied the opportunity to play for the women's soccer team despite a glaring participation gap throughout the University's athletics department." FAC ¶ 54.

Claims under an effective accommodation theory "derive from the Title IX regulation at 34 C.F.R. § 106.41(c)(1), which bases Title IX compliance in part on whether 'the selection of sports and levels of competition effectively accommodate the interests and abilities of members of both

United States District Court
Northern District of California

United States District Court
Northern District of California

1   sexes.'" *Mansourian v. Regents of Univ. of Cal.*, 602 F.3d 957, 964 (9th Cir. 2010). "Effective

2   accommodation claims thus concern the opportunity to participate in athletics, while equal treatment

3   claims allege sex-based differences in the schedules, equipment, coaching, and other factors

4   affecting participants in athletics." *Id*. at 965.

5       Defendants argue that even taking as true plaintiff's allegations of a systemwide imbalance

6   in athletic opportunities for women, plaintiff's Title IX effective accommodation claim fails because

7   she must allege a causal link between the fact that she was released from the women's soccer team

8   and the University's alleged failure to effectively accommodate the needs of female athletes.

9   Defendants argue that plaintiff has not and cannot allege such a connection because plaintiff has

10  alleged that she and other players were released at the end of the season, and they were replaced by

11  other women.  Defendants assert that the judicially-noticeable facts show that the team roster size

12  naturally fluctuated over time, increasing or decreasing slightly from year to year, and that the

13  women's soccer team is larger than the men's team.

14      Plaintiff contends that she has standing to pursue an effective accommodation claim because

15  "she is an athlete willing and able to play sports at Cal" and that she is not required to allege that

16  the University's participation gap has actually harmed her.  Pl's Opp'n at 10.  Plaintiff's argument

17  proves too much.  Under plaintiff's theory, any athlete who alleged that they were able and ready to

18  play a college level sport could bring an effective accommodation claim against a university as long

19  as they could also allege some participation gap somewhere in the overall athletic program.  The

20  cases that plaintiff cites do not support her assertion that she can bring an effective accommodation

21  claim without also alleging that the denial of effective accommodation has personally affected her.

22  *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 871 (5th Cir. 2000) ("Violating Title IX by

23  failing to field women's varsity teams that effectively accommodate the interests and abilities of the

24  university community certainly creates a barrier for female students. . . . We hold, therefore, that to

25  establish standing under a Title IX effective accommodation claim, a party need only demonstrate

26  that she is 'able and ready' to compete for a position on the unfielded team."); *Working v. Lake

27  Oswego Sch. Dist.*, Case No. 3:16-cv-00581-SB, 2017 WL 2954363, at *7 (D. Or. June 29, 2017)

28  (holding female softball athletes, who alleged system-wide unequal treatment between women's

and men's athletic programs, including between the softball and baseball teams, had standing to bring effective accommodation claims challenging failure to offer opportunities for girls to participate in sports in both softball and other sports); *see also Mansourian*, 602 F.3d at 969-71 (analyzing effective accommodation claims brought by female wrestlers who alleged that university's elimination of all women from the previously co-ed varsity wrestling team, which "took place in the context of an overall contraction of female athletic participation opportunities" violated Title IX's effective accommodation requirement).

Here, plaintiff does not allege that she was denied effective accommodation because she wishes to play on an unfielded team as in *Pederson* or *Working*, or that the university eliminated all opportunities for women to participate in a particular sport, as in *Mansourian*. Instead, plaintiff alleges that she played soccer on the Cal women's soccer team, that she and four other women were released at the end of the year, and that they were replaced by women. The Court takes judicial notice of the fact that the size of the women's soccer team has fluctuated slightly during the last three years, that the women's team is larger than the men's team, and that the 2018-2019 season was a losing season. Plaintiff does not allege that the reduction in the size of the team by two players from 2018-2019 to 2019-2020 was the result of anything other than a coaching decision by McGuire about who he wanted on the team. The Court concludes that plaintiff has not stated a claim for denial of effective accommodation in violation of Title IX because plaintiff has not tied her release from the team to any alleged system-wide participation gaps at UC Berkeley.

## II.     State Law Claims

Plaintiff's Unruh Act claim and claim for negligence are predicated on the same allegations of gender discrimination that underly her Title IX cause of action. *See* FAC ¶¶ 59-66. Accordingly, for the same reasons as stated *supra*, the Court concludes that plaintiff has failed to state a claim for violations of the Unruh Act and for negligence.

Plaintiff's claim for breach of fiduciary duty against McGuire is similarly deficient. The FAC alleges that McGuire violated his fiduciary duty "by exercising his power in an arbitrary and discriminatory way." *Id*. ¶ 70. Plaintiff has failed to allege any facts plausibly suggesting that she

United States District Court
Northern District of California

was released on a discriminatory or arbitrary basis.

**III.     Leave to Amend**

The Court concludes that leave to amend would be futile.  Plaintiff has amended the complaint once, and was not able to allege any specific facts in support of her claims of gender discrimination.  The Court also notes that the parties have engaged in some limited discovery, and that nevertheless the FAC contains vague, conclusory, and insufficient allegations.  Finally, the Court notes that plaintiff's opposition does not request further leave to amend and does not identify any additional facts that she would allege if given permission to do so.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS defendants' motion to dismiss the FAC without leave to amend.

**IT IS SO ORDERED**.

Dated: July 10, 2020

_____
SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California